Ex parte Morales, Petitioner and Appellant.

Appeal from the District Court of Humacao in Proceedings for Designation of Heirs.

No. 2669.—Decided July 11, 1922.

Filiation—Acknowledgment—Public Document—Attorney and Client.—A complaint in an action of filiation having been filed in behalf of several alleged natural children, alleging that the plaintiffs were natural children of the defendant and had been acknowledged by him by direct acts which implied the continuous possession of the status of natural children, the defendant admitted in his answer the facts thus alleged as to one of the plaintiffs. *Held:* That such an admission made in a court pleading, which is one of the public documents to which section 131 of the Spanish Civil Code refers if liberally construed, constitutes, without more, a valid and voluntary acknowledgment which after the death of the natural father puts the child in a position to petition for and obtain a declaration of heirship; and that such an admission by the attorney in the name of his client in one of the pleadings of an action binds the client and is conclusive evidence against him.

The facts are stated in the opinion.

*Mr. A. Mena* for the petitioner.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Joaquín Morales Flores was over twenty-one years of age and petitioned the District Court of Humacao to be adjudged the sole and universal heir of Eduardo Morales Trigo, alleging that the latter had died intestate and that his nearest relative was the petitioner, the acknowledged natural son of the said deceased.

On the petition and the evidence the court denied the petition and from that order the present appeal was taken.

It is assigned that the court erred (1) in holding that the third allegation of the petition, which reads "that the nearest relative of Morales Trigo is the petitioner, who is the acknowledged natural son of his said ancestor," is a conclusion of law, and (2) in not having weighed the evidence properly.

We shall examine the asignments in reverse order, beginning with the second.

According to the Special Legal Proceedings Act of March 9, 1904, in connection with section 913 of the Civil Code, as amended March 9, 1911, in order to substantiate his petition the petitioner must prove the following facts: First, the death of the ancestor; second, his relationship to the petitioner; third, that the ancestor died intestate; fourth, that the petitioner is his sole and universal heir.

The second proposition is the only one that requires careful consideration on our part. To prove this, which we may call the cardinal point in this case, that is, the relationship of the petitioner to the deceased, he introduced as documentary evidence the birth certificate of Joaquín de la Cruz Flores showing that he was born on May 20, 1890, as the natural child of María Flores; the record of civil action No. 1512 on file in the lower court brought by María Flores, as the legal representative of her minor children Joaquín de la Cruz, María, Eduardo, Francisco and José Cipriano Flores, against Eduardo Morales Trigo, and two letters written by

Morales Trigo to Joaquín Morales Flores, in which he called himself the father of the latter.

The said action of filiation was brought by means of the corresponding complaint and the answer filed in the name of defendant Eduardo Morales Trigo admitted as true its allegations with regard to Joaquín de la Cruz Flores and denied those referring to the other persons named in the said complaint. No judgment was rendered because the plaintiff withdrew the action.

Is this evidence sufficient to support a judgment in an *ex parte* proceeding instituted by the acknowledged natural child to the effect that he is the intestate heir, or is he obliged first to bring an action for the purpose of establishing his status, as held by the trial court?

In the case of *Puente et al.* v. *Puente et al.,* 16 P. R. R. 556, 560, this court said:

"The procedure prescribed in the act relating to special legal proceedings, to which we have made reference, is not the proper proceeding in which to obtain a judgment holding a person to be the acknowledged natural child of another. It has been the constant practice that when a father fails or declines to make the acknowledgment, that the son must have recourse to a court of competent jurisdiction and exercise an action for filiation, to secure a judgment of the court declaring what the father failed or declined to declare. This proceeding, from its nature, is 'contentious,' and the parties thereto in addition to the son, are the father or his heirs and successors in interest.

"Only when a natural child had been voluntarily and formally acknowledged by the father, or has obtained a judgment recognizing him as such, can recourse be had to the act relating to special legal proceedings to obtain the declaration of his heirs in cases of intestate inheritance. The proceedings prescribed by said act are brief, the terms short, and the purpose of the same is to declare who are all the heirs of a particular person who has died intestate, when the personality of such heirs is established in an incontrovertible manner; and although it is possible that opposing claims be made, such claims generally refer to the better right of the claimants or merely to questions of law."

The evidence shows that when María Flores brought the action against Eduardo Morales Trigo for the acknowledgment of her five children, none of them had been acknowledged in an authentic manner. But the evidence also shows that when the alleged father found himself sued, he voluntarily admitted in his answer that Joaquín de la Cruz, the petitioner in this case, was begotten by the defendant in that case during his relations with the plaintiff in that case and that he had acknowledged him as his son by direct acts which implied the continuous possession of the status of natural child, and denied the allegations regarding the other four children. This makes it necessary for us to determine the value as evidence of the record of the said action.

The petitioner maintains that the admission made by his ancestor in the said action, acknowledging the petitioner as his natural child, is a formal acknowledgment which contains all of the requirements of the law applicable to the case. We ask: What law is applicable to the case? This court has held repeatedly that the filiation and acknowledgment of natural children should be governed by the laws in force at the time of their conception and birth and under which the acts were performed which are supposed to establish their acknowledgement. It is alleged that the petitioner was born on May 20, 1890, and for this reason his case comes under the Spanish Civil Code, article 131 of which reads as follows:

"The acknowledgment of a natural child should be made in the record of birth, in a will, or in some other public document."

That statute seems clear. The acknowledgment of a natural child is of a special character and should be express and established by direct and positive evidence. It is a voluntary acknowledgment to which that article of the Code refers and not a forced acknowledgment, the requirements for which are also prescribed by article 135 of the Code. The latter requires a contentious action of filiation. But

in this case we are considering a voluntary acknowledgment and have now to decide whether the record introduced in evidence constitutes the special and positive proof required by section 131, *supra,* or, in other words, whether the said record may be classified within the meaning of the words "public document."

"It is unnecessary to speak here of executions because we are referring to acknowledgments made voluntarily. By public documents we should understand those that are considered as such for the purposes of evidence in article 596 of the Law of Civil Procedure; therefore, among them those that may be applicable to the matter." 1 Manresa, Spanish Civil Code, 567.

In article 596 of the Spanish Law of Civil Procedure the following is found:

"Under the name of formal public documents are included: * * *—7. Writs of execution and all kinds of judicial proceedings."

In commenting upon this article Manresa says that the word execution is not used in the sense of a final judgment, but in that of a formal public document wherein the said judgment is contained, and that at pages 497 *et seq.* of volume 1 of his Commentaries on the Spanish Law of Civil Procedure he has set forth what is understood by judicial proceedings and the formalities with which they must be solemnized in order to be valid and effective, and in the volume and page cited he expressed himself as follows:

"The words *proceeding, process* and *procedure,* especially the first two, are often confounded in forensic language, notwithstanding the fact that each has its own meaning and serves to express a different act or thing within the judicial proceedings.

"By *proceeding* is meant every order, notice, process or act of any kind which is included in a judicial proceeding by the authority of the clerk or officer whom the law vests with that authority; hence the name of proceeding is given to the aggregate of all the parts which constitute a judicial proceeding. According to this definition,

which follows its etymology, the judicial proceeding embraces every step taken in a proceeding with reference to the persons who take part in the suit; whereas the word *process* means an act whose purpose is the execution and fulfillment of a judicial mandate with reference to the thing itself; and *procedure* means the successive order of proceedings and processes that should be followed in the prosecution of actions and proceedings.

"It is evident, therefore, and these definitions so demonstrate, that processes are proceedings; but not all proceedings are processes, inasmuch as orders, notices, declarations and all that is contained in the record are also judicial proceedings and form the parts which together make up the record, including the papers of the parties after they are filed and attached to the record * * * ."

It is easy to understand that under the designation of papers of the parties must be included the pleadings of the parties, such as complaints, answers, motions, etc., or the equivalents thereof as used in the Code of Civil Procedure to designate the same proceedings.

Section 44, 45 and 49 of an Act to regulate the introduction of evidence in civil proceedings of March 9, 1905, read as follows:

"Sec. 44.—Written documents are of two kinds;

"1. Public;

"2. Private.

"Sec. 45.—Public documents are such as are specified in article 1184 of the Civil Code."

Sec. 49.—Public documents are divided into four classes:

"1. Laws.

"2. Judicial records.

"3. Other official documents.

"4. Public records kept in Porto Rico, of public or private documents."

In commenting on article 1216 of the Spanish Civil Code, from which article 1184 cited in the quoted section of the Law of Evidence was taken literally, Manresa again refers to article 596 of the Spanish Law of Civil Procedure and declares positively that judicial proceedings are public docu-

ments, that is, the kind of documents referred to and defined in section 131 of the Spanish Civil Code.

"The said definition, which denotes the external form which must be considered, is sufficiently ample to include all public documents, among which there is no doubt are included those which, distinguishing public authority into notarial, administrative and judicial, are enumerated in section 596 of the Law of Civil Procedure, which is in harmony with the present section   *   *   *.

"Finally, there is no difficulty or doubt that under the meaning of the code certificates of birth, of marriage, and of death, to which the code repeatedly refers, issued following the entries in the books, by the priests or those who have charge of the civil register, are public documents, as well as executions and judicial proceedings of every kind, the latter being made under the supervision of the officers in charge of judicial authority." Manresa, vol. 8 pp. 433 and 434."

It has been established without any doubt that judicial proceedings are public documents under the requirements of article 131 of the Spanish Civil Code which governs the present case. Now the only question to be considered and decided is whether an admission like that made by the attorney for the ancestor has the same effect under the law as if made by the ancestor himself. We are inclined to answer in the affirmative.

"An answer under our statute is not proof for defendant, but an admission in the answer of a fact stated in the complaint is conclusive evidence against him." Estee's Pleadings, vol. 2, p. 567.

"Where a party to an action makes solemn admissions against his interest in a pleading, they should be treated as admitted facts, and he will not be heard to question the correctness thereof at any stage of the case in the trial court, or on appeal, when properly preserved in a transcript or case-made so long as they remain a part of the record." 2 Jones on Evidence, 514.

"It goes without saying that not every admission of an attorney is evidence against his client. Statements made by attorneys out of court   *   *   *·  are not admissible against their clients, even though such statements relate to the subject matter in controversy.   *   *   *

During the progress of the trial attorneys stand in the place of their clients and may perform the same acts which such clients might perform in person." 2 Jones on Evidence, pp. 457, 454.

"The general rule is that the admissions made by an attorney in one action are not admissible in a different action between the same parties. But where an absolute and unqualified admission is made in a pending cause, whether by written stipulation of the attorney or as a matter of proof on the hearing, it may be used on a subsequent trial and cannot be retracted, unless by leave of the court on a proper showing of mistake, imposition or surprise." 2 Jones on Evidence, 459, 460.

The principle stated that the admissions of an attorney bind his client under certain conditions is recognized by our laws and has been defined partially by the jurisprudence of this court.

Section 9 of the Act to regulate the practice of the profession of law in Porto Rico of March 8, 1906, provides as follows:

"Sec. 9.—Attorneys shall, as long as they shall not have been notified by their clients of the revocation of their appointment, have the right to compel the client to comply with such judicial measures as the attorney may have taken on behalf of said client and appearing of record in the minutes of the court before which the same are taken, but not otherwise."

"The presumption that an attorney is authorized to represent a party is not lightly to be rebutted and his acts are susceptible of easy ratification. It is a principle in the interest of the whole bar. This presumption lies at the foundation of our court procedure, for otherwise at every step the court would have to stop and question its attorneys as to their authority." *Aparicio Brothers* v. *H. C. Christianson & Co.*, 25 P. R. R. 1.

As a result of all that has been stated, we will say that we must not forget that we are considering a voluntary and not a forced acknowledgment. As to the latter there are also certain requirements that must exist before the natural child is in a position to assert the remedy *a fortiori* of an action of

filiation. For the voluntary acknowledgment which we are considering in these *ex parte* proceedings for declaration of heirship, the proof of which is especially determined by law, there is no other way open but to accept the letter of the law, and although its provisions are old they are nevertheless liberal in scope and therefore in harmony with the liberal construction which we have placed upon them. We do not think that we could well place a strict construction upon the provision of section 131 that one of the forms of a voluntary acknowledgment is that made in a public document. If we were permitted to make such a restriction, then we would inevitable and necessarily have to conclude that a voluntary acknowledgment can only be made in three ways: By the birth certificate, by will or by a public deed. Otherwise, in what other public document than those specified could an acknowledgment be made under section 131? Or, reducing the terms of the inquiry, when could a voluntary acknowledgment be made except in a public deed and be considered as made in a public document? We could not then go beyond the scope of the Notarial Law and this would not be in harmony with the letter or the spirit of section 131 of the Spanish Civil Code, and such is the case because it was not the intention of the Legislature to use the words "public documents" in a specific or restricted sense, but with a general or generic meaning. Otherwise it would have been sufficient to say in the said section "notarial documents" or "public deeds." But the meaning purposely given to the words "public documents" is different, and among them there are included not only instruments executed before a notary, but also every authentic document, its authenticity being what gives it the character of formal and public.

The proof upon which a plaintiff must rely in a forced acknowledgment is necessary for the very reason that his acknowledgment is devoid of the authenticity arising from the

authority of a notary or other officer, or of the requirements that the law classifies as importing solemnity and authenticity.

Manresa has pointed out these differences as follows:

"The authorities, taking as a basis the provisions of Law 1, Tit, 18, 3rd Partida, above cited, divide documents into *public*, *authentic* and *private*. A document is public when it has been executed with the corresponding solemnities before a notary public empowered to give authority to the act and these documents are also called *public deeds*. A document is *authentic* when it is issued by a corporation or person vested with authority, or by any other public officer in connection with the exercise of his duties. *  *  * " Manresa, Code of Civil Procedure, vol. 3, pp. 221 and 222.

The other error assigned by the appellant is that the court held that the third allegation of the petition amounts to a conclusion of law. The allegation reads as follows:

"That the nearest relative of Morales Trigo is the petitioner, who is the acknowledged natural son of his said ancestor."

We are of the opinion that the court below was right in holding that this allegation was a conclusion of law. The case of *Ex Parte Sánchez,* 28 P. R. R. 129, is applicable. The petition should allege the facts which determine the rights of the petitioner. And although the evidence tended to cover all of the necessary points, it could have been clearer and stronger as to the fact that the petitioner was the sole heir.

For the foregoing reasons the judgment appealed from must be reversed and the case remanded to the district court where it originated for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.